UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MICHAEL ALLEN FRANCISCO,
Petitioner,

v.

UNITED STATES OF AMERICA,
Respondent.

RECEIVED
BY MAIL
DEC 06 2004
CLERK, US DIST. COURT
ST. PAUL, MN

Crim No. 01-193 (DSD/SRN)

Civil No. 04-4155 (DSD)

Petitioner's Reply to Government's Response on Motion to Vacate Under 28 U.S.C. § 2255

---

Comes Now the Petitioner, Michael Allen Francisco, pro se, and hereby submits his Reply to the Government's Response in Opposition to Petitioner's Motion to Vacate under 28 U.S.C. § 2255.

The Government filed its Response Brief in Opposition to Petitioner's motion to vacate on November 2, 2004. In their brief the Government argued: (1) that under existing Eighth Circuit precedent Petitioner is a career offender under the Federal Sentencing Guidelines (hereinafter "Guidelines"); and (2) that Blakely v. Washington, 542 U.S. ___ (2004), is not applicable to the Guidelines, and even if it was, the Blakely decision is not retroactively available to Petitioner on collateral review. For the following reasons, the Government's argument are misplaced.



SCANNED
DEC 06 2004
U.S. DISTRICT COURT ST. PAUL

2 copies to DSD

**I. SHEPPARD V. UNITED STATES MAY ALTER THE EIGHTH CIRCUIT'S HOLDING THAT ALL BURGLARIES ARE CATEGORICALLY CRIMES OF VIOLENCE UNDER U.S.S.G. §4B1.1., AND THEREFORE, THIS COURT SHOULD HOLD THIS § 2255 PETITION IN ABEYANCE PENDING THE OUTCOME OF SHEPPARD.**

The Government argues that under existing Eighth Circuit precedent, Petitioner is a career offender. (Gov.R. at 3.). Petitioner does not challenge this assertion. However, Petitioner would contend that the finding by this Court that Petitioner is a career offender is in jeopardy and cannot be resolved as a definitive matter until the Supreme Court issues an opinion in Sheppard v. United States, No. 03-9168 (cert. gr. June 21, 2004). And accordingly, the Court should hold this § 2255 motion in abeyance pending the outcome of Sheppard.

A: Sheppard could alter Eighth Circuit precedent.

There is no question that Sheppard could alter the Eighth Circuit's view that all burglaries are crimes of violence. (Pet. Memo. at 7-8). The Government even concedes as much. (Gov.R. at 3). Therefore, the question of whether all burglaries are categorically crimes of violence under the Guidelines and the ultimate question of whether Petitioner is a career offender, cannot be resolved until the Supreme Court issues a decision in Sheppard.

B: The ruling in Sheppard would be retroactive to cases on collateral review.

The Government argues, in passing, that even if the Supreme Court's decision in Sheppard would alter the Eighth Circuit's holding-

that all burglaries are categorically crimes of violence- that the new rule may not be retroactive to cases on collateral review. (Gov.R. at 3). The Government cites no authority and makes no serious argument to support this conclusory assertion. Indeed, the Government cannot support their argument because when the Supreme Court issues a ruling in Sheppard, it will be a substantive ruling which is retroactively available to petitioners on collateral review.

New substantive rules of law generally apply retroactively to cases on collateral review. Schiro v. Summerlin, 2004 WL 1402732 (U.S. decided June 24, 2004), at 3. Substantive rules apply retroactively because they are beyond the ambit of Teague v. Lane, 489 U.S. 288 (1989)- which bars petitioners from benefitting from new procedural rules on habeas. See, Bousley v. United States, 523 U.S. 614, 620-21 (1998)("[T]eague by its terms applies only to procedural rules, we [the Court] think it is inapplicable to the situation in which this Court decides the meaning of a criminal statute enacted by Congress."). A rule is substantive rather than procedural if it alters the scope of a criminal statute by interpreting its terms, see Bousley, 523 U.S. at 620-621, or it places particular conduct or persons beyond the government's power to punish, see Saffle v. Parks, 494 U.S. 484, 494-495 (1990).

Using this standard, the Supreme Court's upcoming decision in Sheppard will be a substantive ruling. In Sheppard, the Court is asked to determine what Congress intended in drafting the Armed Career Criminal Act. Specifically, if Congress authorized

a district court to determine whether a general burglary is a crime of violence under the Act. When the Supreme Court decides the meaning of a criminal statute enacted by Congress, the Court issues a substantive ruling which is retroactive. C.f., Bousley, 523 U.S. at 620-21; Davis v. United States, 417 U.S. 333, 346 (1974).

D: This Court, in the interests of justice, should hold this motion to vacate in abeyance pending the outcome of Sheppard.

The Government aruges that under existing Eighth Circuit precedent Petitioner is a career offender. However, the Government did concede that Sheppard could alter Eighth Circuit precedent, and thus, alter the disposition of this case. (Gov.R. at 3). Petitioner would contend that this Court can and should wait to decide this question until after the Supreme Court decides Sheppard.

This Court should hold this § 2255 motion- pending the outcome of Sheppard- for pragmatic reasons. First, if Sheppard rejects the catogoric method- that all burglaries are crimes of violence- then Petitioner will have a viable claim based on an intervening change of law. See English v. United States, 998 F.2d 609, 612-13(8th Cir. 1993) (holding that a § 2255 petitioner can relitigate a claim decided on direct appeal if there has been an intervening change of law). Second, if the Court denies the claim now, and Sheppard provides relief while Petitioner is on appeal, than presumably the Eighth Circuit would remand back to this Court for a new ruling on the merits, as the appeals

court will pass on an issue that was not reviewed by the district court. This would be a waste of judicial reources and this scenario is likely, given that Sheppard will be decided before the end of this Supreme Court term; in June of 2005. The best solution is to hold the § 2255 motion in abeyance until the Supreme Court decides Sheppard, and then this Court could make a final decision on whether Petitioner is a career offender under the Guidelines. Finally, neither the government, nor Petitioner would be prejudiced by holding the § 2255 motion, as both sides could file supplemental briefings after Sheppard is decided.

This Court should hold the § 2255 motion in abeyance for another reason; to prevent a miscarriage of justice. Under the Anti-Terrorism and Effective Death Penalty Act (hereinafter "AEDPA") habeas petitioners are required to raise all claims that might justify relief at the present and in the future. Indeed, failure to raise a claim-that might produce relief based on an upcoming Supreme Court decision- on a petitioner's initial § 2255 motion has substantial consequences. See 28 U.S.C. § 2255 and § 2244(b)(2) (stating strict guidelines for the filing of a second or successive habeas corpus petition). Petitioner should not be punished for properly raising this claim which may justify relief in the near future. Also, it should be noted that the Eighth Circuit is the only circuit in the country which holds, categorically, that all burglaries are crimes of violence under the Guidelines.
It would be a miscarriage of justice if petitioner is classified as a career offender (solely because his prosecution took place in the Eighth Circuit domain) and subsequently, a Supreme Court

decision resolves the circuit conflict and petitioner is unable to benefit from the ruling.

For the above reasons, Petitioner respectfully requests that this Court not decide this issue until the Supreme Court issues its opinion in Sheppard.

**II. This Court should hold the motion to vacate in abeyance pending the outcome of United States v. Booker and United States v. FanFan.**

In arguing that Blakely v. Washington, 542 U.S. ___ (2004), provides no relief to Petitioner, the Government contends (1) Blakely does not apply to the Guidelines; (2) even if Blakely does apply to the Guidelines, the ruling is not retroactive; and (3) even if Blakely was retroactive, Petitioner could not benefit from the ruling. The Government's arguments are one part conjecture, one part panic, and for the following reasons their arguments should be rejected.

**A: Blakely does apply to the Federal Sentencing Guidelines.**

In Blakely, the Supreme Court made clear the limits of the Sixth Amendment right to a jury trial. The Court held that any fact that increases the penalty for a crime must be proved to a jury beyond a reasonable doubt. In discussing the Sixth Amendment limits imposed on a judge during sentenceing the Court stated: "When a judge inflicts punishment that the jury verdict alone does not allow, the jury has not found all facts which the law

makes essential to the punishment, and the judge exceeds his proper authority." Blakely, slip op. at 7. The Court clarified that "[a]s Apprendi held, every defendant has the right to insist that the prosecutor prove to a jury all facts legally essential to the punishment." Id. at 17 (emphasis omitted).

The Federal Guidelines suffer from the same constitutional defects as the Washington guideline system at issue in Blakely. Both allow judge-made findings- outside those authorized by the jury's verdict- to increase a sentence under the guidelines. And these judge-made findings are found by a preponderance of the evidence standard rather than beyond a reasonable doubt required by Apprendi. The federal government conceded as much prior to the Supreme Court's decision in Blakely.

When Blakely was briefed, the Solicitor General argued that a decision- in favor of the petitioner in Blakely- would effect the Federal Guidelines. See Brief of United States as Amicus Curiae, at 25-26 ("[S]ubstantial questions [about the federal Guidelines] would arise if the Court rules that Apprendi applies [to the Washington guideline system] based on petitioner's theory that the statutory maximum for purposes of Apprendi is the punishment that would be imposed without any findings of fact other than the facts reflected in the jury verdict alone or the guilty plea alone... Such a rule would have profound consequences for the federal Guidelines."). Therefore, the Government's ad hoc arguments that Blakely does not now apply to the federal Guidelines should be rejected.

**B: The Blakely ruling, and the upcoming Booker decision will have retroactive effect.**

The rule expressed by the Blakely Court and the upcoming decision decisions in United States v. Booker and United States v. FanFan will be retroactively available to petitioners on collateral review. Contrary to the Government's view, the Blakely ruling is not a new rule of law. And even if it is a new rule, the Blakely rule falls under the "watershed" exception of Teague v. Lane, 489 U.S. 288 (1989).

In Teague, the Supreme Court stated that, as a general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced. The Court established a three-step inquiry to determine when new rules of criminal procedure apply retroactively on collateral review. Teague, 489 U.S. at 288. First, a court must determine the date on which defendant's conviction became final. O'Dell v. Netherland, 521 U.S. 151, 156 (1997). Second, a court must decide whether the Supreme Court's ruling constitutes a new rule of constitutional criminal procedure. Schiro v. Summerlin, 2004 WL 1402732, at *3-4 (U.S. 2004). Third, a new procedureal rule may nonetheless apply to collateral review if it falls within one of two narrow exceptions to Teague's general rule barring retroactivity. Summerlin, supra, at *3-4.

In this case, Petitioner concedes that his conviction had become final prior to the decision in Blakely. Therefore, this Court must determine if Blakely is a new rule.

"[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's case became final." Teague, 489 U.S. at 301. In determining whether a rule is "new", a court must survey the legal landscape as it then existed and determine whether a court considering petitioner's claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the Constitution requires the rule he seeks. Saffle v. Parks, 494 U.S. 484, 488 (1990). Under this standard, the Blakely rule is not a "new" rule of law under Teague.

In Blakely, the Court reaffirmed and applied the rule of Apprendi, that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." Blakely, slip op. at 5. The Court also reaffirmed the rule layed out in Ring v. Arizona, 536 U.S. 584 (2002), that judicial factfinding cannot increase the penalty beyond "the maximum sentence a judge may impose solely on the basis of facts reflected in the jury verdict or admitted by the defendant." Blakely, slip op. at 6-7 (citing Ring, 536 U.S. at 602).

An examination of Ring and Apprendi establishes that the Blakely rule was dictated by precedent existing at the time Petitioner's conviction became final. Taken together, Apprendi and Ring stand for the following rule: the elements of a crime are all facts necessary to impose the maximum punishment to which a criminal defendant

is subject. Although this is more expansive than the formulation actually stated in Apprendi, it is hardly suprising that the Apprendi Court did not articulate its rule in those terms, because the sentencing factor there being considered did increase the statutory maximum. In Ring, however, the Supreme Court explicitly stated that death, not life imprisonment, was the prescribed statutory maximum sentence, yet that did not excuse Arizona from proving the facts necessary to impose the death sentence to a jury beyond a reasonable doubt. Thus, Apprendi and Ring required a court to determine the practical effect of a sentencing scheme; if the finding of a fact increased the maximum punishment that a judge could impose by law, than that fact needed to be proved to a jury beyond a reasonable doubt. Taken together, these cases dictated the rule that the Blakely Court issued.

The Government points to the fact that prior to Blakely, every courts of appeals held that Apprendi did not apply to factfinding under the Guidelines, (Gov.R. at 9), and therefore, the Blakely rule is "new." This may be partly true, but is also true that none of them appears to have considered the possibility that Ring required a different result. See e.g., United States v. Merritt, 361 F.3d 1005, 1015 (7th Cir. 2004); United States v. Pettigrew, 346 F.3d 1139, 1147 n. 18 (D.C. Cir. 2003); United States v. Floyd, 343 F.3d 363, 372 (5th Cir. 2003); United States v. Banks, 340 F.3d 683, 684-85 (8th Cir. 2003)(assuming but not deciding whether Ring mandates that the Apprendi rule applies to factfinding under the Guidelines). Since the circuit courts did not explicitly consider the effects of Ring to the Apprendi ruling, their holdings-

that Apprendi did not apply to the Guidelines- do not answer the ultimate question of whether Blakely was dictated by precedent.

It is clear that all the Constitutional pieces were in place once Ring was decided, which was one year before Petitioner's conviction became final. As the Eighth Circuit has noted, "[p]roperly viewed, Blakely does not announce a new rule of law for the circuit courts to agree or disagree upon, but rather recasts our understanding of the Apprendi rule by clarifying the meaning of the phrase 'statutory maximum.'" United States v. Pirani, No. 03-2871, (8th Cir. decided August 5, 2004), slip op. at 21. All Blakely did was make explicit what the Ring Court had already made implicit. Thus, the Blakely ruling is not a new rule under Teague, and accordingly, the Blakely rule is retroactive. 1/

In the past, the Eighth Circuit has recognized that certain Supreme Court opinions are not new rules because they are merely an application of existing principles. See e.g., Walton v. Caspari, 916 F.2d 1352, 1361 (8th Cir. 1990); Rodden v. Delo, 143 F.3d 441, 445 (8th Cir. 1998); Wilkens v. Bowersox, 145 F.3d 1006, 1013 n.5 (8th Cir. 1998); Smith v. Groose, 205 F.3d 1045, 1053 (8th Cir. 2000). Indeed, if several Supreme Court opinions point to a logical conclusion- like Apprendi and Ring did to Blakely- than a subsequent rule is not a "new" rule under Teague. C.f., Fern v. Gramley, 99 F.3d 255, 258 (7th Cir. 1996)("We do not believe, however, that Teague should be read as a manifesto hostile to all but the narrowest conception of legal determinism. Our system of jurisprudence is premised on the motion, that, at least in some cases, precedent will lead ineluctably to a specific legal

1/ Justice O'Connor-who authored Teague- recognized that the Blakely rule is not a "new rule" under Teague. Blakely (O'Connor, dissenting).

outcome."). Based on these principles, the Blakely decision and the upcoming decision in Booker and FanFan are not new rules of law, and the decisions would have retroactive effect.

If this Court decides that Blakely is a new rule, then in the alternative, Petitioner would contend that Blakely is a "watershed" rule of criminal procedure.

A new rule should be applied retroactively if it is a watershed ruling that "requires the observance of those procedures that... are implicit in the concept of ordered liberty." Teague, 489 U.S. at 307. Such "watershed" rules of criminal procedure are those in which (1) a failure to adopt the new rule "creates an impermissibly large risk that the innocent will be convicted," and (2) "the procedure at issue... implicate[s] the fundamental fairness of the trial." Id. at 312. The Blakely rule clearly meets this standard.

In Blakely, the Court issued a rule that reflected longstanding constitutional rights. The Blakely rule is two-fold. First, any fact which the law makes essential to the punishment must be found solely by a jury. Second, this jury determination must be made beyond a reasonable doubt. See Apprendi, 530 U.S. at 477 ("Taken together, these rights indisputably entitle a criminal defendant to a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.")(quotations and citations omitted). The latter holding- that the Due Process Clause protects a defendant against conviction except upon proof beyond a reasonable doubt- increases the accuracy of the criminal proceedings and implicates fundamental fairness.

There is no question that judicial factfinding by a preponderance of the evidence "seriously diminishes accuracy that there is an impermissibly large risk" of injustice. Summerlin, supra, at *5 (citing Teague, 489 U.S. at 312-313). As the Supreme Court stated in In Re Winship, 397 U.S. 358 (1970), the reasonable doubt standard "[p]lays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error." Winship, 397 U.S. at 363. Furthermore, the reasonable doubt standard is "indespensable, for it impresses on the trier of fact the necessity of reaching a subjective state of certitude on the facts in issue." Id. at 364. Since the denial of the right to a jury verdict of guilt beyond a reasonable doubt deprives a criminal defendant of a "basic protection... without which a criminal trial cannot reliably serve its function," Sullivan v. Louisiana, 508 U.S. 275, 281 (1993), it must also "diminish the likelihood of obtaining an accurate conviction," Teague, 489 U.S. at 315.

The requirement of factfinding beyond a reasonable doubt also "alters our understading of the bedrock procedural elements that must be found to vitiate the fairness of a particular conviction," and sentence. Teague, 489 U.S. at 311 (quotations, citations, and emphasis omitted). The reasonable doubt standard "provides concrete substance for the presumption of innocence- that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law." Winship, 397 U.S. at 363 (citing Coffin v. United States, 156 U.S. 432, 453 (1895).

Indeed, a criminal defendant "would be at a severe disadvantage, a disadvantage amounting to a lack of fundamental fairness, if he could be adjudged guilty and imprisoned for years on the strength of the same evidence as would suffice in a civil case." Id. Blakely and Apprendi unequivocally altered our understanding of this "bedrock procedural element" by requiring it to be applied to certain facts that previously were subject to a preponderance of the evidence standard only. See Apprendi, 530 U.S. at 478 (The "reasonable doubt standard... reflects a profound judgment about the way in which law should be enforced and justice administered.") (citing Winship, 397 U.S. at 361-362). Two Supreme Court decisions further supports a holding that Blakely is a watershed rule of law.

In Ivan v. City of New York, 407 U.S. 203 (1972), a unanimous Court held that the rule expressed in Winship was retroactively available to habeas petitioners. In so holding, the Court stated that "[w]here the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect." Ivan, 407 U.S. at 204. Although Ivan was pre-Teague, the Ivan Court's holding- that Winship's constitutional standard of proof beyond a reasonable doubt was granted retroactive effect- rested on the fact that Winship reduced the chances of unreliable convictions and made clear the bedrock principle of Due Process. Ivan, 407 U.S. at 204-205. Therefore, the holding meets Teague's dual-prong standard for "watershed" rulings.

In Hankerson v. North Carolina, 432 U.S. 233 (1978), the Supreme Court had to determine if the rule of Mullaney v. Wilbur, 421 U.S. 684 (1975), was retroactive. The Mullaney Court had held that Maine's rule requiring a defendant charged with murder to prove by a preponderance of evidence, in order to reduce the homicide to manslaughter, that he acted in heat of passion on sudden provacation, violated the requirement under Winship, that the prosecution prove beyond a reasonable doubt every fact necessary to constitute the crime charged. The respondent, in Hankerson, claimed that since the Mullaney rule would have called into question a large amount of cases and would have a devastating impact on the administration of justice (much like retroactively applying Blakely to all federal cases), the rule should not have been declared retroactive by the Court. In response, the Hankerson Court acknowledged the impact of a ruling on retroactive application, but nonetheless stated that the Court could not deviate from the rule stated in Ivan: that where a major purpose of a new rule is to strengthen the truth-finding function and raises serious questions about the accuracy of guilty verdicts in past trials, the new rule is given complete retroactive effect, regardless of the impact that retroactive application of the new rule would have on the administration of justice. Hankerson, 432 U.S. at 243. In the end, the Court believed that the deprivation of proof beyond a reasonable doubt to a criminal defendant justified retroactivity.

Here, a Blakely violation is just as great as the violations in Winship and Mullaney. In all these cases, the defendants were

denied factfinding beyond a reasonable doubt on the elements of the offense. Unlike Winship and Mullaney, the Blakely defendant was also deprived of a finding by a jury. Also, Blakely's sentence was increased on the basis of findings found only by a preponderance of the evidence. Thus, Blakely equally justifies retroactive application.

The Government contends that since the Summerlin Court determined the Ring rule was not a "watershed" ruling, than as a fortiori, Blakely also is not a watershed ruling. (Gov.R. at 12). However, the Summerlin ruling cannot be read as broad as the Government would like. If anything, the Summerlin decision directs a holding that the Blakely rule requires retroactive application.

In Summerlin, the Court determined that Ring v. Arizona, supra, presented a new rule of criminal procedure which was not retroactively available. In doing so, the Court also rejected the contention that the jury requirement for the sentencing factor in Ring was a "watershed" rule demanding retroactive application. Addressing that exception, the Court stated "[t]hat a new procedural rule is fundamental in some abstract sense is not enough; the rule must be one without which the likelihood of an accurate conviction is seriously diminished." Tyler v. Cain, 533 U.S. 656, 667 n.7 (2001); Summerlin, supra, at *5. The Court held that the jury requirement did not meet this standard: "When so many presumably reasonable minds continue to disagree over whether juries are better factfinders at all, we cannot confidently say that judicial factfinding seriously diminishes accuracy." Summerlin, at *5.

The Summerlin Court, however, did not address whether a rule requiring factfinding beyond a reasonable doubt- rather than by a preponderance of the evidence- meets the second exception of Teague. It could not, because in Ring the aggravating fact necessary for the death penalty had to be found beyond a reasonable doubt, albeit by a judge. See, Ring, 533 U.S. at 592-593. Therefore, the Summerlin Court only addressed the jury trial violation and not the second holding of Blakely and Apprendi- that certain facts have to be proved beyond a reasonable doubt.

Unlike the jury trial guarantee, the Due Process Clause requirement that elements of the offense be proved beyond a reasonable doubt does seriously enhance accuracy. See, Supra, at 12-13. The Summerlin Court noted that it was arguable that factfinding conducted by judges, rather than by judges, enhanced the accuracy of the proceedings. However, the same cannot be said for factfinding proved beyond a reasonable doubt.

Since the Guidelines enactment commentators have expressed concerns about allowing judges to find guideline enhancements and especially the use of the preponderance standard in making these findings. See e.g., Martin, The Cornerstone has No Foundation: Relevant Conduct in Sentencing and the Requirements of Due Process, 3 Const.L.J. 25, 34-36 (1993); Heaney, The Realities of Guideline Sentencing: No End to Disparity, 28 AM.Crim.L.Rev. 161, 208-220 (1991); Herman, The Tail that Wagged the Dog: Bifurcated Fact-Finding under the Federal Sentencing Guidelines and the Limits of Due Process, 66 S.Cal.L.Rev. 289 (1992); Beale, Procedural

Issues Raised by Guideline Sentencing: The Constitutional Significance of the "Elements of the Sentence," 35 Wm. & Mary L.Rev. 147, 157-158 (1993). Jurists have also been critical of the application of a preponderance standard- rather than beyond a reasonable doubt- to findings of relevant conduct under the Guidelines. See e.g., United States v. Siverman, 976 F.2d 1502, 1519, 1527 (6th Cir. 1992) (Merritt, C.J., dissenting); Id. at 1533 (Martin, J., dissenting); United States v. Concepion, 983 F.2d 369, 389, 396 (2nd Cir. 1992)(Newman, C.J., concurring); United States v. Galloway, 976 F.2d 414, 436 (8th Cir. 1992)(Bright, J., dissenting, joined by Arnold, C.J., Lay, J., and McMillan, J.); United States v. Restrepo, 946 F.2d 654, 663 (9th Cir. 1991)(Pregerson, J., dissenting, joined by Hug, J.); Id. at 664 (Norris, J., dissenting, joined by jug., J., Pregerson, J., and D.W. Neslon, J.). When so many presumably reasonable minds continue to agree that factfinding conducted under the beyond a reasonable doubt standard, is superior to factfinding by a preponderance, a court can confidently say that the latter "seriously diminishes accuracy." Summerlin, supra, at *5.

Simply put, the Blakely rules twin purpose- of protecting the jury trial right and a defendant's right to have the prosecution prove elements of an offense beyond a reasonable doubt- enhances accuracy and the rule implicates fundamental fairness. Under Teague, this qualifies the Blakely ruling for retroactive application.

Contrary to the Government's contentions, Petitioner is not claiming that Blakely applies to prior convictions. Instead, Petitioner argues that the Supreme Court, in Booker and FanFan, may declare the guidelines, as a whole, unconstitutional. In that case, Petitioner was sentenced under a sentencing regime that may now be non-existent. Petitioner would then request a new sentencing within the statutory minimum and maximum, and without application of the Guidelines.

Based on the above reasons, and the uncertainty of Booker and FanFan's effect, Petitioner would ask this Court to hold his §2255 motion in abeyance pending the Supreme Court's decision.

## CONCLUSION

Wherefore, Petitioner respectfully requests that this Court hold his § 2255 petition in abeyance pending the outcome of the Supreme Court's decisions in Sheppard, Booker, and FanFan.

Date: Dec, 1, 2004

Respectfully submitted,

Michael A. Francisco

Michael Francisco

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of this Reply Brief was sent to the party below. Said brief was sent by U.S. mail, postage pre-paid, on this 1st day of December, 2004.

Erica H. MacDonald
Assistant U.S. Attorney
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

Michael Francisco

Michael Francisco