ATTACHMENT "A"

SCANNED
MAR 2 1 2005
U.S. DISTRICT COURT ST. PAUL

The Booker Court issued two holdings or rules. The first defined the scope of the jury trial and reasonable doubt provisions of the Constitution. The second established a remedial holding which declared that two statutes were facially unconstitutional.

The question for this Court is whether the Apprendi rule or the rules established in Booker are retroactively available to petitioners on collateral review. The answer to that question lies in the retroactivity analysis of Teague v. Lane, 489 U.S. 288 (1989).

**(2) Teague's retroactivity analysis**

In Teague, a plurality of the Supreme Court adopted a new approach to the retroactive application in habeas corpus proceedings of newly announced legal rules. 3/ Following Justice Harlan's approach in Mackey v. United States, 401 U.S. 667, 675 (1971) (Harlan, J., concurring in part and dissenting in part), the Court stated that generally, new constitutional rules of criminal procedure will not apply retroactively to cases that were final when the new rule was announced. Teague, 489 U.S. at 310.

In Teague and subsequent cases, the Court established a three-step inquiry for determining when new rules apply retroactively on collateral review. First, a court must determine the date on which defendant's conviction became final. 4/ Second, a

---

3/ The Teague doctrine has been ratified by the Court on a number of occasions since Teague. See e.g., Gray v. Netherland, 518 U.S. 152 (1996); Sawyer v. Smith, 497 U.S. 227 (1990); Penry v. Lynaugh, 492 U.S. 302 (1989).

4/ Petitioner concedes that his conviction became final before Apprendi and Booker were announced.

court must decide whether the Supreme Court's new ruling is a substantive ruling or a rule of constitutional criminal procedure. Schriro v. Summerlin, 2004 WL 1402732, at *3-*4 (U.S. 2004). Third, a new procedural rule may nonetheless apply retroactively it if falls within one of two narrow exceptions to Teague's general rule barring retroactivity. Summerlin, at *3.

**(3) Booker's remedial holding is a substantive decision which is retroactively available on collateral review**

Continuing to follow Justice Harlan, Teague and later Summerlin, identified the types of rules that fall within the first exception of Teague. The Summerlin Court noted that new substantive rules generally apply retroactively. Summerlin, at *3. "This includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." Id. (citation omitted). Such rules apply retroactively because they "necessarily carry a significant risk that a defendant... faces a punishment that the law cannot impose upon him." Id. (citations omitted).

Explaining the first exception, Justice Harlan stated that "[t]here is little societal interest in permitting the criminal process to rest at a point where it ought properly never to repose." Mackey, 401 U.S. at 692. Justice Harlan's opinion makes clear that one historic purpose of the Great Writ- which he sought to preserve in the first exception- was to free individuals who were convicted or sentenced under an unconstitutional statute.

Id. at 692-93 n.8 (citing Ex Parte Siebold, 100 U.S. 371 (1880)). Indeed, a criminal statute invalidated as unconstitutional subsequently renders a conviction or sentence under that statute as void ab initio. See e.g., Siebold, 100 U.S. at 376-77 ("An unconstitutional law is void, and is as no law. An offense created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void and cannot be a legal cause of impairment."); Chicago, I. & L.R. Co. v. Hackett, 228 U.S. 559, 566 (1913) (unconstitutional statute "was... as inoperative as if it had never been passed"). Since the Booker decision invalidated acts of Congress which made the Guidelines mandatory, the decision also rendered all sentences conducted upon those statutes as not just erroneous, but legally void.

The Supreme Court acknowledged as much in Booker. After issuing their remedial holding, the Court had to apply it to the two defendants (Booker and FanFan). With regard to FanFan, the Court noted that his sentence did not violate the Sixth Amendment. Booker, slip op., at 45. Nonetheless, the Court vacated the sentence. Id. That the Court chose this route is illustrative of the nature of their remedial holding. Although FanFan was sentenced to the guideline range based solely on the jury's verdict, the sentence was still unlawful because the district court sentenced FanFan under the mandatory guideline system, a system the Court had already declared as void based on constitutional grounds.

When a rule renders a statute as unconstituional and a conviction or sentence as void ab initio, the rule should be applied retroactively. See, United States v. Johnson, 457 U.S. 550 (1981); American

Trucking Assns. v. Smith, 496 U.S. 167, 201 (1990)(Scalia, J., concurring). Although the Court has not, post-Teague, been faced with determining the retroactive application of a rule rendering a sentence as void, the Court has concluded that certain penalty-focused substantive decisions are necessarily retroactive.

The Court, in Furman v. Georgia, 408 U.S. 238 (1972), held that the Eighth Amendment precluded the imposition of the death penalty under the Georgia statutes at issue in the case. In Penry v. Lynaugh, 492 U.S. 302 (1989), the Court held as a substantive matter that the execution of a mentally-retarded person amounted to cruel and unusual punishment. Neither Furman or Penry altered the range of conduct or narrowed the scope of a criminal statute. Instead, the rules merely restricted the application of a particulur punishment. Nonetheless, the Court has cited Furman and Penry as paradigmatic examples of substantive rulings which justify retroactive application. Johnson, 457 U.S. at 550; Penry, 492 U.S. at 329-30.

Judged by these standards, Booker's remedial holding is properly classified as substantive. The Booker Court held that the statutory provisions making the Guidelines mandatory were facially unconstitutional and had to be excised. As a simple matter, the invalidation of two statutes thereby "[a]ffect[ed] the substance of criminal laws." United States v. Sood, 969 F.2d 774, 776 (9th Cir. 1992). The effect of invalidation here, led to a holding that the Guidelines are "effectively advisory" (Booker, slip op., at 22), and any

defendant who was sentenced under the mandatory guidelines system faced a punishment that the law could not "impose upon him," (Summerlin, supra, at *3). Although common sense dictates that Booker's remedial holding should be appropriately characterized as a substantive ruling, one other point ineluctably leads to the same conclusion.

That the change in sentencing law resulting from the Booker Court's remedial holding, constitutes a substantive ruling can be seen from examining the Court's holdings in other contexts. For example, under the Supreme Court's Ex Post Facto jurisprudence, a violation occurs inter alia, if the change in law is substantive rather than a mere procedural change. Dobbert v. Florida, 432 U.S. 282, 293-94 (1977). On this point Miller v. Florida, 482 U.S. 423 (1987), provides authoritative proof that the change in sentencing law here, constitutes a substantive change in law which must be applied retroactively.

In Miller, the defendant argued that a change in the presumptive guideline range under Florida's sentencing laws violated the Ex Post Facto Clause of the Constitution. The Supreme Court, acting unanimously, held that the change in Florida's Guidelines violated the Constitution. Relevant to this case, was the Court's determination of whether the change in law was substantive rather than a procedural change.

In reviewing the change in Florida's guideline system, the Miller Court concluded that the change altered substantial rights of the defendant. Miller, 482 U.S. at 433. Because the change in law increased the quantum of punishment, the change had "[l]ittle about it that could be deemed procedural." Id. The State of Florida argued that the change in the guidelines operated only as a "procedural guidepost" for the sentencing court's exercise of discretion within the same statutory imposed sentencing limits. The Court rejected this contention because the statute at issue (1) was a law enacted by the Florida legistlature and had the force and effect of law; (2) required that a sentencing judge was bound by strict standards from departing from the presumptive guideline range; and, (3) directly and adversly affected the sentence the defendant receives. Id. at 435.

The change from a mandatory guideline system to an advisory one cannot be differentiated from the change in Miller. First, the previously required guideline ranges changed and increased the quantum of punishment for all federal offenses. See, Booker, slip op., at 2 n.3 (Scalia, J., dissenting) ("Although the Guidelines took pre-existing sentencing practices into account, they are a product of policy decisions by the Sentencing Commission-including, for instance, decisions to call for sentences 'significantly more severe than past practices' for the 'most frequently sentenced offenses in the federal courts.'")(citing United States Sentencing Commission, Fifteen Years of Guideline Sentencing xvi (Nov. 2004), at 47)(emphasis omitted). In effect, the guideline ranges established new minimum and maximum penalties within the statutory

range. Second, the mandatory guidelines imposed "binding" sentencing ranges on courts and had "[t]he force and effect of laws." Booker, slip op., at 9. In addition, the mandatory system did not simply provide "procedural guideposts" for use in the exercise of discretion within the statutory range.

Instead, the mandatory guidelines created "a high hurdle that must be cleared before discretion [could] be exercised." Miller, at 435. The mandatory system only allowed a departure from the guideline range when there existed a circumstance not adequately taken into consideration by the Sentencing Commission. See, 18 U.S.C. § 3553(b)(1). This statute mandated that departures were, for the most part, unavailable. See, Booker, slip op., at 10. In most instances, the sentencing court was only allowed discretion after the relevant guideline range was calculated.

Finally, the mandatory guidelines as compared to an advisory system, adversly affects the sentence a defendant receives. The Sentencing Commission concluded that no departures were warranted for: age, education, mental condition, drug dependency, employment record, family ties, military contributions, and post-conviction rehabilitation. See, U.S.S.G. Chapter 5, Part H. The current sentencing system allows a defendant to argue these mitigating factors to a sentencing court in actually setting the sentence, rather than just imposing a sentence within the previously determined guideline range. Judicial factfinding is another example of adverse effects. Under the old system, judges routinely found facts- which were not charged, nor proven to a jury beyond a reasonble doubt- that required an increase to

an applicable guideline range. Although the current system allows judges to consider non-charged and non-proven facts, a judge is not bound to impose a certain sentence based on these facts. It is not a stretch to conclude that some courts will not impose the harsh penalties associated with so-called relevant conduct, which violates in principle, the Booker Court's constitutional procedural holding. In any event, the adverse consequences of the mandatory guideline system, and the subsequent change to advisory guidelines is virtually identicle to the change which the Court in Miller, characterized as substantive.

There is no question the remedial holding announced in Booker, constitutes a substantive change in federal sentencing law. It is equally without question that this holding must be applied retroactively to petitioners on collateral review.

**(4) Apprendi and Booker's procedural holdings are "watershed" rules of criminal procedure which justify retroactive application.**

A new rule should be applied retroactively if it is a "watershed" ruling that "requires the observance of those procedures that... are implicit in the concept of ordered liberty." Teague, 489 U.S. at 307. Such watershed rules are those that: (1) implicate the "fundamental fairness" of criminal proceedings; and, (2) an absence of the rule "seriously diminishes" the accuracy of a conviction or sentence. Schriro v. Summerlin, 2004 WL 1402732, at *3, *5 (U.S. 2004). Few new rules can meet the Teague criterion, but the rule announced in Apprendi and Booker happens to be one of them.